UNITED STATES DISTRICT COURT OF
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN C. COCQUYT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No: 2:22-cv-320 |
| v. | ) |
| | ) |
| NORFOLK SOUTHERN CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

The proper Defendant Norfolk Southern Railway Company ("NSRC"), incorrectly identified as Norfolk Southern Corporation, by counsel, files its Brief in Opposition to Plaintiff's Motion to Remand to State Court and in support, states as follows:

**I.   Introduction**

Defendant NSRC properly removed this case because the Plaintiff's Amended Complaint sets forth a cause of action that is preempted by federal law. On October 17, 2022, Plaintiff, John C. Cocquyt, filed his Complaint in Marshall Circuit Court, a State court in Marshall County, for Adverse Possession against NSRC's Property. He then filed an Amended Complaint on October 20, 2022, in Marshall Circuit Court asserting Title by Acquiescence to NSRC's Property. NSRC timely filed to remove that cause of action from Marshall Circuit Court on November 1, 2022. On November 11, 2022, Plaintiff filed a Motion to Remand this cause of action. In his Motion to Remand, Plaintiff argues that (1) remand is proper because of improper divisional venue, and (2) lack of subject matter jurisdiction.  Both arguments lack merit.

1

NSRC's filing in the Hammond Division of the Northern District was an error; the filing should have been made in the South Bend Division of the Northern District. However, this error does not mean that the case should be remanded back to Marshall Circuit Court. This case belongs in Federal Court based on the doctrine of federal question. The Hammond Division filing does not make remand appropriate; rather, this case simply should be transferred to South Bend Division of the Indiana Northern District of Federal Court.

Federal subject-matter jurisdiction also exists here.  With the ICC Termination Act, 49 U.S.C. §§ 10101 ("ICCTA"), Congress established that regulating rail transportation is an exclusively federal endeavor and preempted all state law remedies in this area. As many federal courts have held, the ICCTA thus preempts state property-law claims that would dispossess a railroad of its property—whether or not the railroad is currently using the property for rail transportation.  And the ICCTA does not merely create ordinary, defensive preemption, but complete, jurisdictional preemption that supports removal to federal court.

II. **Argument**

A. **A Federal Court has proper subject matter jurisdiction over this case.**

1. **Legal Standard**

"Removal of actions to federal court is governed by 28 U.S.C. § 1441, which provides that a defendant may remove a case to federal court only if the federal district court would have original subject matter jurisdiction over the action." *USA Satellite & Cable, Inc. v. Glen Health & Home Mgmt.*, 2015 U.S. Dist. LEXIS 29934, *4 (N.D. Ill. 2015).  "[A] a state claim may be removed to federal court in only two circumstances--when Congress expressly so provides… or when a federal statute wholly displaces the state-law cause of action through complete pre-

emption. When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that 'arises under' federal law to be removed to federal court." *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (U.S. 2003).

### 2. The ICCTA Completely Preempts Plaintiff's Amended Complaint

The ICCTA states that the U.S. Surface Transportation Board ("STB") has exclusive jurisdiction over the regulation of railroad transportation and that "the remedies provided under [ICCTA] with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). Federal precedent is clear that this language preempts state-law claims that would have the effect of regulating "rail transportation," as the ICCTA broadly defines that term. *Union Pac. R.R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 679 (7th Cir. 2011). That includes claims that would use state law to take railroad property, whether through condemnation, adverse possession, prescriptive easement, or otherwise. *See id.* (condemnation); *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 208 (4th Cir. 2021) (adverse possession, prescriptive easement); *City of Lincoln v. Surface Transp. Bd.*, 414 F.3d 858, 861-62 (8th Cir. 2005) (condemnation).

As the Seventh Circuit has explained, "using state eminent domain law," or other state law, "to condemn railroad property or facilities for another use that would conflict with the rail use is exercising control—the most extreme type of control—over rail transportation." *Union Pac.*, 647 F.3d at 679 n.2. Thus, "federal law preempts state-law efforts against railroads to treat railroad rights-of-way as abandoned or lost through adverse possession." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017) (emphasis omitted). Many cases hold

3

such claims preempted, either defensively or completely. *See Skidmore*, 1 F.4th at 214 (collecting cases); *B & S Holdings, LLC v. BNSF Railway Co.*, 889 F. Supp. 2d 1252, 1258 (E.D. Wash. 2012) ("the ICCTA completely preempts this state law adverse possession cause of action because not only would it interfere with railroad operations, but would divest the railroad of the very property with which it conducts its operations"); *14500 Ltd. v. CSX Transp., Inc.*, No. 1:12-cv-1810, 2013 WL 1088409, at *5 (N.D. Ohio Mar. 14, 2013) ("the ICCTA preempts Plaintiff's adverse possession claim because the evidence presented demonstrates that the taking of Defendant's property would affect railroad transportation in the future").

For example, in *Skidmore*, 1 F.4th 206, the Fourth Circuit held that the ICCTA completely preempted—and thus allowed removal to federal court of—a landowner's adverse-possession and prescriptive-easement claims aimed at property within Norfolk Southern's right-of-way. The parcel at issue was on the other side of a creek from the railroad's tracks, and the landowner claimed that "Norfolk Southern has never utilized the land on her side of Loop Creek, and has no immediate plans to do so." *Id.* at 214. Those facts did not avoid preemption. The court adopted the STB's explanation that the ICCTA "preempts any 'application of state law claims that would take rail property for another, conflicting use, including adverse possession claims that would interfere with rail use, *present or future*.'" *Id.* (quoting *14500 Ltd. LLC – Pet. for Declaratory Order*, FD 35788, 2014 WL 2608812, at *4 (S.T.B. June 4, 2014)). It does not matter whether the railroad is currently using the property at issue; "the fact that Norfolk Southern may use the land in the future is enough." *Id.* at 214.

These cases rebut Plaintiff's claim that the ICCTA does not preempt claims that "solely involve state property law." Mot. 5. The adverse-possession and prescriptive-easement claims in *Skidmore* were state property law claims; so were the condemnation claims in *Union Pacific*

4

and *City of Lincoln*; and so were the adverse-possession claims in *B&S Holdings* and *14500*. Plaintiff has misread the out-of-circuit decision in *Franks Investment Co. LLC v. Union Pacific Railroad*, 593 F.3d 404, 413 (5th Cir. 2010) (en banc). The issue there was whether the railroad could close a crossing, not whether a plaintiff could use state law to permanently take ownership of railroad land. And even if *Franks* suggested that state property claims were exempt from preemption, binding Seventh Circuit precedent holds to the contrary. See *Union Pac.*, 647 F.3d at 679 & n.2. In short, plaintiffs cannot use state law to "adversely possess[] land over which a railroad had a right of way." *Skidmore*, 1 F.4th at 213.

Nor can Plaintiff avoid preemption because his claims assert title by acquiescence instead of adverse possession. That is so for three reasons.

*First*, as far as the ICCTA is concerned, there is no material difference between title by acquiescence and adverse possession. Both types of claims involve the use of state law to take ownership of railroad property based on the railroad's failure to exclude or eject the plaintiff. Under title by acquiescence, absent an express agreement—which Plaintiff does not and cannot allege—"[u]se and improvement of the land up to the alleged boundary line may be sufficient to satisfy the requirement of an agreement if the adjoining landowner acquiesces." *Huntington v. Riggs*, 862 N.E.2d 1263, 1268 (Ind. Ct. App. 2007). Likewise, adverse possession "require[es] the claimant be 'in actual, open, notorious, and exclusive possession [of the land], claiming to be the owner in fee.'" *Fraley v. Minger*, 829 N.E.2d 476, 484 (Ind. 2005). The underlying concept is the same. To be sure, the doctrines do not totally overlap, but in terms of the relationship to the property within the federally regulated interstate rail network, no significant difference exists.

The ICCTA's purpose reenforces why it equally preempts title by acquiescence claims: "[A]llowing an individual landowner to wrest exclusive control of land within the national rail

corridor away from a railroad could expose a rail carrier to death by a thousand cuts. Rail carriers would either have to be hyper-vigilant about fending off adverse possession claims along countless miles of tracks, or risk losing ownership interests in land that is (or might be) necessary to conduct business and comply with federal regulations." *Skidmore*, 1 F.4th at 217.  That would be improper, because "maintaining a unified federal mechanism for governing the national rail network is an issue of overwhelming national importance." *Id.*  This rationale applies just as strongly here. Plaintiff's claim is simply an effort to artfully plead around the mountain of cases holding that the ICCTA preempts adverse possession claims against railroads.  That effort fails.

*Second*, Plaintiff cannot avoid preemption by reframing his title by acquiescence claim as involving a "voluntary agreement."  True, the ICCTA does not preempt state law claims based on "private contracts," which generally are not a form of "regulation."  *E.g.*, *PCS Phosphate Co. v. Norfolk Southern Corp.*, 559 F.3d 212, 218 (4th Cir. 2009).  But neither that rule, nor its reasoning, apply here.  This rule exempts "contractual obligations"—that is, it requires an actual contractual agreement between parties.  *See id.* at 219 n.2.  No such agreement exists here.  Although Indiana courts sometimes treat acquiescence alone as constructively establishing a type of agreement, that does not mean a true contract exists for ICCTA purposes.[1]

What's more, the exception for contractual obligations exists for two reasons.  One, absent this exception, "enforcement of every contract with 'rail transportation' as its subject would be preempted," *id.* at 218; preempting claims like Plaintiffs' poses no such risk.  And two, voluntary contractual agreements reflect the "carrier's own determination and admission that the agreements would not unreasonably interfere with interstate commerce."  *Id.* at 221.  Again, that

---

[1] This case is nothing like Plaintiff's lead example.  In *Freilburger v. Fry*, "the evidence clearly indicate[d] that the Frys and the Freiburgers' predecessor in interest agreed to erect a partition fence and treated that fence as a legal boundary line."  439 N.E.2d 169, 172-73 (Ind. Ct. App. 1982).  That case thus involved an actual agreement, which Plaintiff does not allege here.

6

is not true for claims like this, especially given that the ICCTA covers potential future rail use; Plaintiff cannot contend that Norfolk Southern's failure to eject him reflects a determination by the railroad that it does not *and never will* need the property for rail purposes. Unsurprisingly, Plaintiff cites no case refusing to apply ICCTA preemption to a possessory claim like his because it supposedly depends on a voluntary agreement.

*Third*, Plaintiff cannot avoid preemption by arguing that NSRC's predecessors acquiesced before the ICCTA was enacted in 1995. Plaintiff does not currently hold title to this property; NSRC does. Plaintiff brought this action to seek to *obtain* title—that is, he is attempting to use state law to take property the railroad currently owns, which is exactly what all the cases above forbid. At best, Plaintiff had the basis for a state law claim that he did not pursue until now. Again, Plaintiff cites no case holding that railroad property can be taken because it was adversely possessed before the ICCTA was enacted. In any event, even before the ICCTA, the Interstate Commerce Commission had "exclusive and plenary authority over rail line abandonments." *Starke Cty. Farm Bureau Co-op. v. ICC*, 839 F. Supp. 1329, 1332 (N.D. Ind. 1993).

In conclusion, the Plaintiff's artful attempt to plead around a completely preempted claim for adverse possession in order to remain in state court must fail, as the claim is still preempted by the ICCTA.

                                                             Respectfully submitted,

                                                             */s/ Barry L. Loftus*
                                                             Barry L. Loftus, Atty. #20993-79
                                                             Scotty N. Teal, Atty. #35713-53
                                                             STUART & BRANIGIN LLP
                                                             300 Main Street, Suite 900
                                                             P.O. Box 1010
                                                             Lafayette, IN 47902
                                                             Phone: 765.423.1561

                                                Fax: 765.742.8175
Email: bll@stuartlaw.com
        snt@stuartlaw.com
***Attorneys for Norfolk Southern Railway Company***